The plaintiff in this suit is Mrs. Syvira Ashmore, widow of Earl Ashmore, appearing in her own behalf as well as in her capacity of tutrix of her minor child, Wanda Dolores Ashmore. Her husband died following an operation for a ruptured appendix on March 15, 1941. In her petition she alleges that he had been and was working for the defendant, W. Horace Williams Company, on March 3, 1941, on which day he sustained an accidental injury by falling fifteen feet to the ground in the collapse of a building then under construction, and as a result of a severe blow to his side, in the region of his appendix, or, in the alternative, of the severe jarring from the fall, he developed appendicitis which subsequently caused his death. In the further alternative she claims that the severe jarring he sustained caused his appendix which may even before have been inflamed or abscessed, to finally burst or rupture, producing peritonitis from which he died.
She avers that she and her child were dependent entirely upon her deceased husband for sustenance and support and that they are entitled to receive compensation from the defendant at the rate of $20 per week, his average weekly wage having amounted to $70, for a period of three hundred weeks. *Page 283 
The defendant, for answer, denies that the plaintiff's husband was in its employ at the time of the alleged accident and consequently all allegations of her petition with respect to any liability for compensation are also denied. Further answering it is alleged that even though it be assumed that he was an employee and was involved in an accident such as is set out, nevertheless his death which is said to have occurred on March 15, 1941, was solely and completely unrelated to or connected with any acts, facts and circumstances growing out of the fall of the said building.
The case was tried in the district court on the issues as thus presented to it, and after trial, judgment was rendered in favor of the defendant rejecting the plaintiff's demand at her costs. From that judgment she is prosecuting the present appeal.
The only testimony relating to the fall of the building is that of the witness, J.W. Williams, who stated that he, the decedent and another man named Doyle drove to work together the morning of March 3, 1941, the date of the accident. He saw the building collapse and says that Earl Ashmore, who he had seen working on the roof, fell with it. Within ten or fifteen minutes afterwards he saw him again when he told him that he was hurt. He further states that he went with him to the first aid office where he was examined but was told that they could find nothing wrong with him. The testimony of this witness stands uncontradicted and although it is the only proof found in the record concerning the accident, it is sufficient to establish the two important facts, namely, that on that date, Earl Ashmore, the decedent was working for the defendant and that he did fall to the ground from the roof of the building when it collapsed. We may safely proceed then on the basis that the relation of employer and employee did exist between the parties and that there was an accident which may have given rise to a claim for compensation. The vital and important question that is then presented is whether or not the death of the employee which ensued some twelve days afterwards, had any causal connection with the accident. This presents a matter which has to be determined almost entirely on the medical testimony that was produced for the record.
The plaintiff herself offered two medical experts in the persons of Dr. W.E. Reid and Dr. E.M. Shaw. Neither had ever seen the decedent and their expert testimony was based solely and entirely on the facts which were given them for the purpose of forming their opinions as to whether or not the attack of appendicitis which resulted in the employee's death, may have been caused by any trauma which he may have sustained in the accident.
After stating the difference between chronic and acute appendicitis, Dr. Reid explained that in chronic appendicitis the patient experiences a tenderness or soreness and that there are flare-ups of the chronic condition, thus forcing him to take care of himself. On the other hand acute appendicitis is an immediate inflammation of the appendix and the onset is sudden and more or less complete. He was of the opinion that it would require a severe and violent blow to bring about a case of acute appendicitis; such a blow in fact, as would leave external evidence of having been received, as for instance bruises, abrasions or other objective signs of injury.
Dr. Shaw's testimony is substantially along the same line as that of Dr. Reid's. Like him he was of the opinion that although a light blow in the region of the appendix could cause a flare-up of a case of chronic appendicitis, in his opinion it would require a severe, direct and violent blow, leaving some external signs, to produce acute appendicitis.
As it is shown by the testimony of Dr. Y. Ardoin, the last physician consulted by the decedent himself, and the surgeon who operated on him, that the appendix was already ruptured when he performed the operation, a condition which he was of the opinion existed for about forty-eight hours, the decedent's case was undoubtedly one of acute and not chronic appendicitis. In considering the case in connection with the testimony of Dr. Reid and Dr. Shaw, therefore, it is evident that the blow which the decedent sustained, in order to have produced his trouble necessarily would have had to be one of great violence, and so severe that there should have been external signs appearing in the region of the appendix. Although plaintiff was examined by other physicians before he went to see Dr. Ardoin, not one of them testified that they had observed any such signs resulting from a blow or a traumatism of that nature. It is rather significant too, that one of those consulted shortly after the accident, diagnosed the case as one of potential hernia on the right side. At that time, in *Page 284 
this doctor's opinion, at least, no symptoms of appendicitis were present.
Dr. Hogan A. Dew examined the decedent during the afternoon of March 6, 1941. His recollection is that he was presented with a letter from the doctor who had made the previous examination and who suspected a potential hernia. Dr. Dew's findings with regard to hernia were negative however. In his examination he found no external bruises along the abdomen, the groin or the genitalia. He was of the further opinion that at that time, the decedent was not suffering from a ruptured appendix because there was no tenderness or rigidity of the lower abdomen which is usually present in such a case. This doctor is of the same opinion as all the others that it is almost impossible for a blow to the abdomen to cause appendicitis without a penetrating wound. Appendicitis, in his opinion, is an infectious disease and is not related to trauma. He could see no causal connection between the fall the decedent had in the collapse of the building and his death from peritonitis following the operation.
Dr. Ardoin first saw the plaintiff on March 9, 1941 and says that he saw absolutely no signs of traumatism which he states should have been present in the case of a blow of sufficient severity to produce a ruptured appendix. Even in cases of chronic appendicitis which might flare-up from an injury produced by trauma, he is of the opinion that it would not be aroused unless there was external evidence of the traumatism. He seems to be definitely of the opinion that there was no connection whatever between any accident and the appendicitis and peritonitis from which the decedent died.
As against all of this medical testimony, the only point that is urged by counsel for plaintiff is that prior to this accident the decedent was a strong and healthy man who had been doing hard work all of his life and was never known to complain, and consequently it is reasonable to assume that this condition which developed so shortly after the accident must have had some connection with his resulting death. That is a circumstance which not infrequently has much weight in deciding a case of this kind where there is a conflict in the testimony of the doctors. But here there is no conflict and besides, whilst the argument might have some persuasive force if the decedent's case had been one of chronic appendicitis the proof here indicates that it was an acute case.
Counsel also refers to certain medical authorities, quoting several excerpts in his brief. In examining the medical witnesses he quoted these same excerpts with the view of showing some diversity of opinion on the relation of traumatism to appendicitis, but in each instance the witness was able to reconcile his own views with those stated in the text quoted from. From all the testimony, the greatest comfort plaintiff can be said to have derived is that, in the opinion of some doctors, there is a possibility that appendicitis may be produced from a blow of sufficient severity to the abdomen, in the area of the appendix. The possibility seems to be so remote however that it may be said to be beyond the realm of probability, and as it is often stated, even in compensation cases, awards cannot be based on probabilities alone. The plaintiff, like in all other cases, must prove his demand to a legal certainty, and this, the plaintiff in the present case has not done.
Judgment affirmed, at the costs of the appellant.